UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| GEORGETTE HANKS, as the Sole Heir of ROSA PARKER HANKS, deceased, | }<br>}<br>}<br>} |
| Plaintiff, | } Case No.: 2:24-cv-821-MHH |
| v. | }<br>} |
| ASCENSION ST. VINCENT'S HOSPITAL, *et al.*, | }<br>}<br>} |
| Defendants. | } |

## **MEMORANDUM OPINION AND ORDER**

On June 21, 2024, Georgette Hanks filed this action against Ascension St. Vincent's Hospital and Noland Hospital Birmingham Downtown in federal court. Ms. Hanks asserts claims under federal and state law. (Doc. 1). Ms. Hanks filed with her complaint a motion for leave to proceed *in forma pauperis*. (Doc. 2). The magistrate judge to whom this case initially was assigned denied Ms. Hanks's motion to proceed *in forma pauperis* because Ms. Hanks did not demonstrate that she was indigent. (Doc. 4). Ms. Hanks paid the filing fee and filed two amended complaints. (Docs. 5, 6).[1]

---

[1] Because the magistrate judge did not receive consent from all parties to issue dispositive decisions in this case, the Clerk of Court randomly reassigned the case to the undersigned. (Docs. 13, 14).

1

In her amended complaints, Ms. Hanks added as defendants several physicians and a hospital administrator. (Doc. 5, pp. 2–3; Doc. 6, pp. 2–3). Noland Hospital and Dr. Leland Allen have filed motions to dismiss this case under Rules 12(b)(1), 12(b)(3), 12(b)(4), and 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 12, pp. 1, 15–16; Doc. 18, pp. 1, 10–12).[2] This opinion resolves these motions. Because the Court may resolve the motions under Rule 12(b)(6), the Court will not evaluate the arguments the defendants make under other subsections of Rule 12.

# I

Rule 12(b)(6) enables a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint against the "liberal pleading standards set forth by Rule 8(a)(2)." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Pursuant to Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A Rule 8(a)(2) statement of a claim "need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson*, 551 U.S. at 93 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2009)).

---

[2] On August 23, 2024, the Clerk of Court issued a summons for all defendants. (Doc. 7). The Court has not received an executed summons for Dr. Brockington or for Mr. Russell, and these defendants have not otherwise appeared in this action. (*See* Doc. 10); *see* FED. R. CIV. P. 4(l)–(m).

2

This is particularly true with respect to *pro se* complaints. Courts must construe *pro se* documents liberally. *Erickson*, 551 U.S. at 94. A district court must hold a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson*, 551 U.S. at 94 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Still, a district court "may not serve as de facto counsel for a party, or … rewrite an otherwise deficient pleading in order to sustain an action." *Ausar-El ex. rel. Small, Jr. v. BAC (Bank of America) Home Loans Servicing LP*, 448 Fed. Appx. 1, 2 (11th Cir. 2011) (internal quotations and citations omitted). In addition to her complaint, Ms. Hanks has described her factual allegations in her responses to the defendants' motions to dismiss. Because Ms. Hanks is proceeding *pro se*, the Court considers the factual allegations in all of her submissions.[3]

When evaluating a Rule 12(b)(6) motion to dismiss, a district court accepts as true the allegations in the complaint and construes the allegations in the light most

---

[3] Ms. Hanks's responses to the defendants' motions to dismiss contain details that do not appear in her original or amended complaints. (*Compare* Docs. 1, 5, 6 *with* Docs. 23, 24, 26, 27, 28). Given Ms. Hanks's status as a *pro se* litigant, the Court treats Ms. Hanks's responses to the defendants' motions as motions to amend her complaint. *See Newsome v. Chatham Cnty. Det. Ctr.*, 256 Fed. Appx. 342, 344 (11th Cir. 2007) (construing a *pro se* plaintiff's response to a magistrate judge's report and recommendation as a motion to amend the complaint where the *pro se* plaintiff alleged new facts in the response). Consistent with Rule 15 of the Federal Rules of Civil Procedure, the Court permits the amendment. Rule 15 authorizes a district court to freely grant a plaintiff leave to amend her complaint when justice so requires. FED. R. CIV. P. 15(a)(2). The decision to grant a party leave to amend is within the sound discretion of the court. *Abramson v. Gonzalez*, 949 F.2d 1567, 1582 (11th Cir. 1992). The amendment will not cause delay, and the defendants will not be prejudiced by this amendment because the Court could order Ms. Hanks to amend her complaint again to include in the complaint the factual details she provides in her opposition to the defendants' motions to dismiss. *See* FED. R. CIV. P. 15(a).

favorable to the plaintiff. *See Brophy v. Jiangbo Pharms. Inc.*, 781 F.3d 1296, 1301 (11th Cir. 2015). Therefore, in deciding the defendants' motions to dismiss, the Court views Ms. Hanks's factual allegations in her complaints in the light most favorable to her.

II

Ms. Hanks's claims concern treatment her mother, Rosa Hanks, received before Rosa passed away.[4] Accepting Ms. Hanks's allegations as true for purposes of this opinion, St. Vincent's Hospital admitted Ms. Hanks's mother on December 13, 2021. (Doc. 26, p. 5). While there, Rosa Hanks was diagnosed with pseudomonas and klebsiella in December 2021 and January 2022. (Doc. 1, p. 6; Doc. 26, pp. 3–4). The hospital's infectious disease specialist, Dr. Allen, knew that Ms. Hanks's mother had contracted infections and that Ms. Hanks's mother was exhibiting symptoms that indicated the presence of those infections in June 2022. (Doc. 26, pp. 3–4). Ms. Hanks asked Dr. Allen whether her mother needed further treatment for her infections, and Dr. Allen said no. (Doc. 26, p. 3). St. Vincent's discharged Rosa Hanks on June 23, 2022. (Doc. 26, p. 5). Ms. Hanks asserts that Dr. Allen provided inaccurate information to her mother's primary care physician, and the misinformation led to her mother's death. (Doc. 26, pp. 2–4). Ms. Hanks

---

[4] The Court expresses its condolences to Ms. Hanks for her loss.

also alleges that her mother had five infections and a clogged feeding tube when St. Vincent's discharged her mother. (Doc. 1, pp. 4-5; Doc. 3, pp. 11-13; Doc. 6, pp. 4-6).

Brookwood Hospital admitted Ms. Hanks's mother on June 25, 2022, and diagnosed her with five infections. (Doc. 26, p. 6). Ms. Hanks's mother died in Brookwood Hospital on August 9, 2022. (Doc. 26, p. 6). Rosa Hanks's death certificate identifies colitis as a cause of death. (*See* Doc. 26, pp. 3–4). Ms. Hanks contends that her mother's colon was inflamed because of infections that St. Vincent's Hospital did not stabilize before the hospital discharged her mother. (Doc. 3, pp. 15-16; Doc. 26, p. 4).

Ms. Hanks filed this action on June 21, 2024, on behalf of Rosa Hank's estate. (Doc. 1). For the estate, Ms. Hanks asserts claims against the defendants under the Emergency Medical Treatment and Labor Act, 42 U.S.C. § 1395dd; the Age Discrimination Act, 42 U.S.C. § 6101; and state laws. (Doc. 5, pp. 12–16; Doc. 6, pp. 5–9).[5]

### III

As a threshold issue, the defendants argue that Ms. Hanks cannot represent the estate of Rosa Hanks because a *pro se* litigant may not file a lawsuit on behalf of

---

[5] The Court understands Ms. Hanks's "Age Discrimination" claim to arise under 42 U.S.C. § 6101; *see Molina v. Aurora Loan Servs., LLC*, 710 Fed. Appx. 837, 840–41 (11th Cir. 2017).

5

another party. (Doc. 12, pp. 11–13; Doc. 18, pp. 13–14). There is a narrow exception to that general rule; the sole heir of an estate with no creditors may represent the estate. *Iriele v. Griffin*, 65 F.4th 1280, 1284–85 (11th Cir. 2023).

In her amended complaint, Ms. Hanks states that she is the "sole heir of the Estate of Rosa Hanks." (Doc. 6, p. 1; *see also* Doc. 26, p. 5). She has provided letters of administration naming her as the personal representative of Rosa Hanks's estate. (Doc. 5, p. 17).[6] Though Ms. Hanks has properly alleged that she is the sole heir of her mother's estate, Ms. Hanks has not indicated whether the estate has outstanding creditors. Therefore, Ms. Hanks has not established that she may proceed in this case *pro se*.

## IV.

Even if Ms. Hanks may proceed *pro se* in this case, Ms. Hanks has not asserted a viable claim under federal law. Ms. Hanks's attempt to assert a claim for the estate under EMTALA misunderstands the scope of EMTALA, the Emergency Medical Treatment and Active Labor Act, 42 U.S.C. § 1395dd. As the Eleventh Circuit Court of Appeals has explained, "EMTALA was not intended to establish guidelines for patient care, to replace available state remedies, or to provide a federal remedy for

---

[6] The Court may consider the letters of administration without converting the defendants' motions to dismiss into motions for summary judgment because the Court may take judicial notice of these legal documents. FED. R. EVID. 201; *U.S. ex rel. Osheroff v. Humana, Inc.*, 776 F.3d 805, 811 n.4 (11th Cir. 2015) (first citing FED. R. EVID. 201; then citing *Lozman v. City of Riviera Beach*, 713 F.3d 1066, 1075 n.9 (11th Cir. 2013)).

medical negligence." *Harry v. Marchant*, 291 F.3d 767, 773 (11th Cir. 2002) (en banc). Instead, EMTALA "was intended to prevent 'patient dumping,' the practice of some hospital emergency rooms turning away or transferring indigents to public hospitals without prior assessment or stabilization treatment." *Marchant*, 291 F.3d at 772. EMTALA establishes "minimal standards for screening and transferring patients, but not for patient care outside these two narrowly defined contexts." *Marchant*, 291 F.3d at 774. EMTALA provides for "a private cause of action against hospitals, but not individual physicians." *Lane v. Calhoun-Liberty Cnty. Hosp. Ass'n, Inc.*, 846 F. Supp. 1543, 1548 (N.D. Fla. 1994); *see also Ashton v. Florala Memorial Hosp.*, Case No. 06-cv-226-ID, 2006 WL 2864413, at * 12 (M.D. Ala. Oct. 5, 2006).

Accordingly, Ms. Hanks may not assert an EMTALA claim against Dr. Allen, Dr. Brockington, Dr. Rahim, Dr. Smith, or Mr. Russell. With respect to St. Vincent's and Noland, Ms. Hanks must properly allege that one or both hospitals violated the statute's screening or stabilization requirement.

The screening provision requires hospitals with an emergency room to provide "an appropriate medical screening examination" to determine whether an indigent patient has "an emergency medical condition." 42 U.S.C. § 1395dd(a). Under the stabilization provision, if "the hospital determines that the individual has an emergency medical condition," then EMTALA requires the hospital to stabilize

an indigent patient if the patient will be transferred. *Marchant*, 291 F.3d at 771 ("Reading the statute in its specifically defined context, it is evident EMTALA mandates stabilization of an individual only in the event of a 'transfer' as defined in the statute."); *see also* 42 U.S.C. § 1395dd(b).

To plead a plausible EMTALA failure-to-screen claim, a plaintiff must allege that the hospital had an emergency department, the patient came to the emergency department and requested examination or treatment, and the emergency department failed to provide an appropriate medical screening. 42 U.S.C. § 1395dd(a). EMTALA "does not define 'appropriate medical screening,'" but a hospital satisfies its statutory obligation by providing to an indigent patient a medical screening that is "similar to one which [the hospital] would provide any other [paying] patient." *Holcomb v. Monahan*, 30 F.3d 116, 117 (11th Cir. 1994) (brackets added).

Ms. Hanks does not allege that Noland had an emergency department or that Rosa Hanks sought an examination or treatment in an emergency department at Noland Hospital. To the contrary, Ms. Hanks alleges that Noland Hospital is an acute care facility. (Doc. 3, p. 12).[7] Ms. Hanks has also not alleged that Rosa Hanks

---

[7] Noland is a "long-term acute care hospital." *See* NOLAND HOSPITALS, https://nolandhospitals.com/ [https://perma.cc/P7V2-NMFR] (last visited Sept. 12, 2025). Alabama does not require a "Long Term [Acute] Care Hospital" like Noland to have an emergency department. ALA. ADMIN. CODE r. 420-5-7-.03(2)(c)(14). Noland is "housed in the same facility as St. Vincent's Hospital," which has its own emergency department. (Doc. 6, p. 5; *see also* 23-1, p. 7). If Noland does not have its own emergency department, then it is not subject to EMTALA's screening requirement.

was indigent or that, because she was indigent, Noland failed to provide the medical screening that Noland would have provided to a paying patient. *See Holcomb*, 30 F.3d at 117. Therefore, Ms. Hanks has not stated an EMTALA claim as to Noland Hospital. As to St. Vincent's, Ms. Hanks alleges, among other things, that St. Vincent's failed to treat her mother's medical condition and did not provide physical therapy to her mother during her mother's six-month stay at the hospital. (Doc. 23-1, p. 8). These allegations cannot support a failure-to-screen claim because Ms. Hanks has not alleged that Rosa Hanks was indigent or that St. Vincent's failed to provide appropriate medical screening because of her indigency. *See Holcomb*, 30 F.3d at 117. Therefore, Ms. Hanks has not plausibly pleaded an EMTALA failure-to-screen claim against Noland or St. Vincent's.

To plead a plausible EMTALA failure-to-stabilize claim, a plaintiff must allege "that the patient had an emergency medical condition, the hospital knew of the condition, the patient was not stabilized before being transferred, and the hospital neither obtained the patient's consent to transfer nor completed a certificate indicating the transfer would be beneficial to the patient and was appropriate." *Holcomb*, 30 F.3d at 117. Therefore, "the stabilization requirement *only* sets forth standards for transferring a patient in either a stabilized or unstabilized condition. By its own terms, the statute does not set forth guidelines for the care and treatment of patients who are not transferred." *Marchant*, 291 F.3d at 771 (italics in

*Marchant*). EMTALA defines "transfer" as "'the movement (including the discharge) of an individual outside of a hospital's facilities.'" *Marchant*, 291 F.3d at 768 n.1 (quoting 42 U.S.C. § 1395dd(e)(4)).

Ms. Hanks alleges that her mother had an emergency condition because of serious infections. (Doc. 6, p. 5). Ms. Hanks also alleges that the infectious disease specialist at St. Vincent's Hospital knew that her mother had been diagnosed with multiple infections and discharged her without stabilizing the infections. (Doc 26, pp. 4–5). But EMTALA governs only emergency care. *See* 42 U.S.C. § 1395dd. While the text of EMTALA does not "restrict the scope of the stabilization requirement to a maximum number of minutes, hours or days after a person with an emergency medical condition presents at a hospital," Ms. Hanks alleges that her mother was hospitalized for six months. The Ninth Circuit has held "that EMTALA's stabilization requirement ends when an individual is admitted for inpatient care." *Bryant v. Adventist Health Sys./W.*, 289 F.3d 1162, 1168 (9th Cir. 2002). The Eleventh Circuit has affirmed the Southern District of Alabama's application of the Ninth Circuit's rule. *See Morgan v. N. Miss. Med. Ctr., Inc.*, 403 F. Supp. 2d 1115, 1128–30 (S.D. Ala. 2005), *aff'd without opinion*, 225 Fed. Appx. 828 (11th Cir. 2007).[8]

---

[8] "If a patient demonstrates in a particular case that inpatient admission was a ruse to avoid EMTALA's requirements, then liability under EMTALA may attach." *Bryant*, 289 F.3d at 1169; *see also Morgan*, 403 F. Supp. 2d at 1129. The Southern District of Alabama noted that the text

St. Vincent's admitted Rosa Hanks for inpatient care on December 13, 2021, and discharged her six months later on June 23, 2022. (Doc. 26, pp. 5–6). Ms. Hanks complains about the treatment that her mother received over that six-month period, but she does not contend that St. Vincent's admitted Rosa Hanks in bad faith. Therefore, Ms. Hanks has not alleged a viable EMTALA failure-to-stabilize claim.

Similarly, Ms. Hanks has not alleged facts to support a claim under the Age Discrimination Act of 1975, 42 U.S.C. § 6101. (Doc. 6, p. 7). The Court has not located factual allegations concerning Rosa Hanks's age or a lapse in treatment that Ms. Hanks's attributes to her mother's age. Even if Ms. Hanks had alleged these facts, she has not alleged that she has exhausted her administrative remedies before bringing her age discrimination claim, and she has not provided EEOC documentation to establish that she exhausted administrative remedies before filing this suit. *See* 42 U.S.C. § 6104(f); 34 C.F.R. § 110.39(a).[9] Therefore, Ms. Hanks's ADA claim appears to be premature.

---

of EMTALA's implementing regulations supports Ninth Circuit's rule; the regulations provide that after a hospital screens a patient, identifies her emergency medical condition, and "admits that individual as an inpatient *in good faith* in order to stabilize the emergency medical condition, the hospital has satisfied" EMTALA's requirements. *Morgan*, 403 F. Supp. 2d at 1129 n.14 (quoting 42 C.F.R. § 489.24(d)(2)(i)) (italics in *Morgan*).

[9] Administrative exhaustion typically is a requirement for discrimination lawsuits under federal law. *See, e.g.*, *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001) (discussing the requirement of administrative exhaustion under Title VII); *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 828–29, 832 (1976) (describing the requirement of administrative exhaustion as a "precondition[]" of a plaintiff's right to bring suit in federal court under Title VII); *Patton v. Anniston Army Depot*, No. 20-cv-00441, 2020 WL 6273738, at *2–3 (N.D. Ala. Oct. 26, 2020) (discussing the requirement that the plaintiff exhaust her administrative remedies before she sues

Because Ms. Hanks has not asserted a viable claim against the defendants under federal law, the Court declines to exercise jurisdiction over Ms. Hanks's state-law claims. When a federal district court has original jurisdiction over an action because the action includes a viable claim under federal law, the district court may exercise supplemental jurisdiction over the plaintiff's state-law claims, 28 U.S.C. § 1367(a), but a district court does not have to exercise supplemental jurisdiction, 28 U.S.C. § 1367(c); *Palmer v. Hosp. Auth. of Randolph Cnty.*, 22 F.3d 1559, 1566 (11th Cir. 1994). A district court may decline to exercise supplemental jurisdiction over state-law claims if the court "has dismissed all claims over which it has jurisdiction." 28 U.S.C. § 1367(c)(3); *see Palmer*, 22 F.3d at 1569 ("Under the language of section 1367, whenever a federal court has supplemental jurisdiction

---

under Title VII or the ADEA, and concluding that she did not do so); *cf. Brune v. Wal-Mart Stores E. LP*, No. 17-cv-00845, 2017 WL 4621790, at *2–3 (N.D. Ala. Oct. 16, 2017) (holding that a Title VII plaintiff successfully exhausted her administrative remedies by filing a charge of discrimination with the EEOC, but that she was entitled to sue only on the grounds of the types of discrimination that she specifically alleged in her EEOC charge).

The Eleventh Circuit has not addressed the question whether exhaustion is a jurisdictional requirement under the ADA. *See McGhee v. Ala. Stat Univ.*, Case No. 2:09-cv-0092-MEF, 2009 WL 1684604, at *2 & n.1 (M.D. Ala. June 12, 2009) (first citing *Williams v. Trevecca Nazarene College*, 162 F.3d 1162 (6th Cir. 1998) (unpublished); then citing *Simmons v. Middle Tenn. State Univ.*, 117 F.3d 1421 (6th Cir. 1997) (unpublished)) ("In the two unpublished opinions cited in the body, the Sixth Circuit concluded that exhaustion is a jurisdictional requirement under the Age Discrimination Act. The Fifth Circuit did not reach the issue. The Eleventh Circuit has not addressed the question."); *see also Ali v. Univ. of Louisville*, Case No. 3:17-cv-00638-RGJ, 2019 WL 539098, at *7 (W.D. Ky. Feb. 11, 2019) ("In order for the district court to have jurisdiction under the ADA, plaintiffs must exhaust their administrative remedies." (quoting *Simmons*, 117 F.3d at 1421)).

under section 1367(a), that jurisdiction should be exercised unless section 1367(b) or (c) applies.").

Here, the Court is dismissing the claims over which it has original jurisdiction, Ms. Hanks's EMTALA claim and her Age Discrimination Act claim. Because this case is in its initial pleadings phase, the Court declines to exercise jurisdiction over Ms. Hanks's state law claims in the interests of judicial economy and convenience. *Palmer*, 22 F.3d at 1569. Alabama's state circuit courts are well-versed in the law that governs Ms. Hanks state-law claims, and those claims may be tried together in state court. Therefore, this Court will not exercise jurisdiction over Ms. Hanks's state-law claims.

Accordingly, the Court dismisses Ms. Hanks's federal claims for failure to state a claim and declines to exercise supplemental jurisdiction over Ms. Hanks's state-law claims.[10] The Court dismisses this action without prejudice.

The Clerk of Court shall please mail to Ms. Hanks via certified mail a copy of this order and close this case. The parties shall review 28 U.S.C. §1367(d) for

---

[10] To the extent that Ms. Hanks alleged claims against "Dr. John Doe," fictitious party pleading generally is not allowed in federal court. FED. R. CIV. P. 10(a) ("The title of the complaint must name all the parties."); *see also Estate of West v. Smith*, 9 F.4th 1361, 1368 n.6 (11th Cir. 2021) ("As a general matter, fictitious-party pleading is not permitted in federal court.") (quoting *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010)). Ms. Hanks will have more latitude to pursue claims against fictitious defendants in state court.

information concerning the period of limitations for claims that Ms. Hanks may refile in state court pursuant to this order.

**DONE** and **ORDERED** this September 24, 2025.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE